IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JAMES BRADSHAW, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:14-CV-017-ALM-CAN |
| | § | |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits [Dkt. 1; Dkt. 19]. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the Administrative Record, the Court finds that the Commissioner's decision should be **REMANDED**.

### BACKGROUND

**I.  PROCEDURAL HISTORY OF THE CASE**

Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act ("Act") on May 11, 2011, alleging an onset of disability date of February 20, 2004 [TR at 113]. Plaintiff's application was initially denied by notice on July 11, 2011, and denied again upon reconsideration on October 19, 2011. *Id.* at 53, 62. On November 16, 2011, Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") [TR at 76], and a hearing was held on June 6, 2012. *Id.* at 23. Plaintiff, represented by counsel, testified at the

hearing, and vocational expert, Michael Gartman ("Mr. Gartman") also testified at the hearing.[1] *Id*. at 23, 27, 46. The ALJ denied benefits on September 14, 2012 [TR at 6], and Plaintiff's request for Appeals Council review was denied on November 14, 2013, making the decision of the ALJ the final decision of the Commissioner. *Id.* at 1.

On January 10, 2014, Plaintiff filed his Complaint in this Court [Dkt. 1]. Plaintiff filed his Brief on February 20, 2015 [Dkt. 19], and Defendant filed her Brief in Support of the Commissioner's Decision on April 21, 2015 [Dkt. 20]. On April 29, 2015, the Administrative Record was received from the Social Security Administration [Dkt. 21].

## II.     STATEMENT OF RELEVANT FACTS

### 1.     *Age, Education, and Work Experience*

Plaintiff was born on February 14, 1944, and was sixty-seven (67) years of age when he applied for disability benefits. *Id.* at 27. Plaintiff attended junior college for two (2) years. *Id.* at 28. Plaintiff was a plumber for fifteen (15) years prior to his alleged onset disability date, and obtained his plumbing master's license in 1978 or 1979. *Id.* at 28-29, 135. At the time of the alleged onset of disability, Plaintiff was in a partnership with another plumber and the plumbing business had employees varying from two (2) to six (6). *Id*. at 30.

### 2.     *Medical Record Evidence*

Plaintiff's medical records reflect that he suffers from coronary artery disease, anemia, hypertension, hypothyroidism, hyperlipidemia, and diabetes mellitus. *Id*. at 170, 186, 217. Plaintiff had triple bypass heart surgery on February 20, 2004, and his medical records indicate that he tolerated the bypass surgery well. *Id*. at 32, 169, 183. Plaintiff has not had further heart

---

[1] The administrative hearing transcript refers to the vocational expert as "Mr. Guardman," however, the ALJ's decision and Plaintiff's Brief refer to him as "Mr. Gartman" [TR at 9, 24; Dkt. 19 at 2]. Accordingly, the Court will hereinafter refer to the vocational expert as Mr. Gartman.

surgery since his triple bypass, but has gained twenty (20) pounds in the past two (2) years. *Id*. at 34, 36.

### 3. Hearing Testimony

#### a. Plaintiff's Testimony

Plaintiff testified that he takes medication to control his blood pressure, for fluid retention, and for his anemia. *Id*. at 39, 41. Plaintiff also testified that the medication he takes for fluid retention causes him to go to the bathroom "constantly." *Id*. at 39. At the hearing, Plaintiff stated that he cannot work because of the constant need to go to the bathroom, and because he gets tired extremely easily. *Id*. at 41. He is able to go to the grocery store and take care of his home as long as he sufficiently spaces out the chores. *Id*. at 41-42. Plaintiff testified that in 2005, a year after his triple bypass surgery, his yearly earnings from the plumbing business in which he was a part owner totaled $46,000.00. *Id*. at 30. Plaintiff was bought out of his plumbing business in 2005, because he was no longer "able to do any work" after his triple bypass. *Id*. at 31. The ALJ questioned Plaintiff regarding his claim that he was no longer able to work after bypass surgery in 2004:

> [ALJ:] What had happened to you in 2005 that made you stop working? [Plaintiff:] Well in 2004 I had triple bypass surgery. [ALJ:] But you continued to. [Plaintiff:] Well I continued in the business. . . . [b]ut was not able to do any work. [ALJ:] Well you still made $46,000.00. [Plaintiff:] Right. [ALJ:] So it didn't matter. You could be in [sic] bed rest. [Plaintiff:] But, yeah, right. [ALJ:] As far as Social Security's concerned, so that's the problem.

*Id*. Notably, Plaintiff's attorney then asked if, from the date Plaintiff was last insured in 2009, Plaintiff was able to work eight (8) hours a day, five (5) days a week. *Id*. at 42. To which Plaintiff answered he was not. *Id*. Plaintiff's attorney also asked Plaintiff if he was able to perform sedentary work, sitting six (6) hours out of an eight-hour day, standing/walking no more

than two (2) hours a day, and lifting no more than ten (10) pounds on a consistent basis. *Id*. at 43. To which Plaintiff answered he was not. *Id*.

### b. *Vocational Expert Testimony*

At the hearing, Mr. Gartman testified as a vocational expert. *Id*. at 46. The ALJ asked Mr. Gartman to state for the record Plaintiff's past relevant work, either as a plumber or a plumbing business owner. *Id*. at 47. Mr. Gartman testified that a plumber was in the Dictionary of Occupational Titles ("DOT")[2] as 862.381-030, has a specific vocational preparation level of seven (7), and an exertional level of "heavy."[3] *Id*. A plumbing business owner is not contained in the DOT and Mr. Gartman opined the closest occupational title would be a plumber supervisor, which is in the DOT as 862.131-018, has a specific vocational preparation level of eight (8), and an exertional level of "medium:"[4]

> [ALJ:] Now as the owner of the business, now because he worked one year where he was still in the business and made $46,000.00. But [Plaintiff] was not – he says he wasn't actually doing the work himself. So I'm assuming that he supervised some of the six people that worked for them. [Mr. Gartman:] Yeah, I'm sure there's probably paperwork or. [ALJ:] Well what would you – in your – I'm asking you for your . . . expert opinion regarding what you would call [the] kind of job that he did during that period of time. [Mr. Gartman:] Let me see, judge. The closest we could get, judge, would be a plumber supervisor.

*Id*. at 47-48.

---

[2] The DOT, which ALJs frequently rely on in the sequential evaluation process, is a comprehensive listing of job titles with detailed descriptions of job requirements including classifications of exertional levels necessary for satisfactory performance of the job. *Romine v. Barnhart*, 454 F. Supp. 2d 623, 625 (E.D. Tex. Aug. 17, 2006); *see also Dictionary of Occupational Titles* (4th ed. 1991). ALJs may also rely on vocational expert testimony in the sequential evaluation process to inform them about the demands of a claimant's past relevant work, either as the claimant actually performed it or as it is generally performed in the national economy. 20 C.F.R. § 404.1560(b)(2).

[3] The Department of Labor defines a specific vocational preparation level of seven (7) as a job that requires a learning period of anything beyond two (2) years up to and including four (4) years. *See Dictionary of Occupational Titles*, Appx. C – Components of the Definition Trailer, (4th ed. 1991). The term "heavy" reflects the estimated overall strength requirement of the job and is defined as "exerting 50 to 100 pounds of force occasionally, and/or 25 to 50 pounds of force frequently, and/or 10 to 20 pounds of force constantly to move objects." *Id.*

[4] The term "medium" reflects the estimated overall strength requirement of the job and is defined as "exerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects." *Dictionary of Occupational Titles*, Appx. C – Components of the Definition Trailer, (4th ed. 1991).

The ALJ inquired further regarding the exertional level stated in the DOT for a plumber supervisor:

> [ALJ:] If he is only supervising without doing any of the work, why would it be medium? Or does that take into consideration that that individual may do some of the work himself? [Mr. Gartman:] Yes, judge. [ALJ:] Okay. But if he doesn't have to do the actual work himself, would that still be classified as medium . . . in your opinion? [Mr. Gartman:] Just doing the supervising and coordinating activities of others probably would just be light and not medium. As long as he didn't have to lift anything over 20 pounds, it would be light and not medium. [ALJ:] Well I'm not sure he actually lifted anything, but you know . . . [s]ince he wasn't doing the work. [Mr. Gartman:] Yeah.

*Id*. at 48.  Plaintiff's attorney on examination clarified that Mr. Gartman was not able to properly classify, using the DOT, Plaintiff's past relevant work as a plumbing business co-owner.  *Id*. at 49.  On this topic, Mr. Gartman specifically testified: "[n]o, and there's actually in the DOT there's no DOT title of owner or proprietor.  There's just – I usually use manager or supervisor." *Id*.  Plaintiff's attorney then expressly asked Mr. Gartman if his testimony is in accordance with the DOT: "[Plaintiff's Attorney:] So would it be fair to say that you would not be able to testify in accordance with – or your testimony would not be in accordance with the DOT when you talk about owner? [Mr. Gartman:] When you're talking about – yes, would not be." *Id*.  Following this statement, neither Plaintiff, nor the ALJ, elicited any further testimony from Mr. Gartman.

### III.     FINDINGS OF THE ALJ

#### 1.     *Sequential Evaluation Process*

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability.  20 C.F.R. § 404.1520.  First, a claimant who is engaged in substantial gainful employment at the time of his disability claim is not disabled.  20 C.F.R. § 404.1520(b).  Second, the claimant is not disabled if his alleged impairment is not

severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work.[5] 20 C.F.R. § 404.1520(e). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability and at the last step the burden shifts to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

### 2. *ALJ's Disability Determination*

The ALJ denied Plaintiff's request for benefits on September 14, 2012, at step four of the sequential analysis [TR at 18]. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date, February 20, 2004, through the date he was last insured, December 31, 2009. *Id*. at 11. At step two, the ALJ found that Plaintiff has the severe impairments of coronary artery disease, hypertension, and diabetes mellitus. *Id*. However, at step three, the ALJ found that these impairments, or combination of impairments, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 12. At step four, the ALJ found that Plaintiff has the residual functional capacity to perform light work, stand/walk for six hours in an eight-hour workday, sit for approximately six hours in an eight-hour workday, and that Plaintiff is not

---

[5] Before evaluating step four of the sequential evaluation analysis, the ALJ must determine the claimant's residual functional capacity, which is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairment. *See* 20 CFR 404.1520(e).

limited in pushing or pulling with his upper and lower extremities. *Id*. Continuing the step four analysis, the ALJ then determined that Plaintiff is able to perform his past relevant work as a plumber supervisor, which does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity determination. *Id.* at 18. Based on this determination, the ALJ concluded Plaintiff was not disabled from February 20, 2004, through December 31, 2009.

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). Additionally, any conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above. 20 C.F.R. § 404.1520(a)(4).

**ANALYSIS**

On appeal, Plaintiff presents a single issue for consideration: did the ALJ fail to follow the requirements of Social Security Ruling ("SSR") 00–4p regarding Mr. Gartman's vocational expert testimony [Dkt. 19 at 4]? Specifically, Plaintiff argues that Mr. Gartman's testimony regarding the job requirements of a plumber supervisor conflict with the DOT job requirements of a plumber supervisor, and that the ALJ had an affirmative responsibility under SSR 00-4p to question Mr. Gartman regarding the apparent conflict between his testimony and the DOT and obtain a reasonable explanation for the apparent conflict. *Id*. at 6-8. The Court agrees, notwithstanding Defendant's argument to the contrary [Dkt. 20 at 4], that in this instance the ALJ failed to adequately elicit a reasonable explanation as required by SSR 00–4p.

**I.  CONFLICTS BETWEEN VOCATIONAL EXPERT TESTIMONY AND THE DOT**

By way of background, conflicts between vocational expert testimony and the DOT regarding job requirements occurred with some regularity, causing the Commissioner to issue SSR 00–4p, which ensures ALJs expose and reconcile any such conflicts before relying on the vocational expert testimony.[6] *Huey v. Colvin*, No. 3:14-CV-2861, 2015 WL 5771818, at *7 (N.D. Tex. Sept. 4, 2015) (citing SSR 00–4p, 2000 WL 1898704).

---

[6] SSRs are "statements of policy and interpretations" adopted by the Social Security Administration that are "binding on all components" of the Administration. *Huey v. Colvin*, No. 3:14-CV-2861, 2015 WL 5771818, at *7 (N.D. Tex. Sept. 4, 2015) (quoting 20 C.F.R. § 402.35(b)(1)). While SSRs are not binding on the courts, courts may "rel[y] upon the rulings in evaluating ALJs' decisions" *Id*. (quoting *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001)).

SSR 00–4p states in relevant part:

> When a vocational expert . . . provides evidence about the requirements of a job or occupation, the adjudicator **has an affirmative responsibility to ask about any possible conflict** between that vocational expert . . . evidence and information provided in the DOT. In these situations, the adjudicator will: Ask the vocational expert . . . if the evidence he or she has provided conflicts with information provided in the DOT; and **if the vocational expert's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict**.

SSR 00–4p, 2000 WL 1898704, at *3 (emphasis added).

A direct conflict between vocational expert testimony and the DOT may arise in two situations: (1) when the testimony regarding the exertional or skill level of a job is facially different than that in the DOT; or (2) when the vocational expert testimony creates a conflict between the ALJ's residual functional capacity determination and the description of the job in the DOT. *Huey*, 2015 WL 5771818 at *7 (citing *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000)). When a conflict arises, an ALJ is permitted to rely on the vocational expert testimony over the DOT if the record reflects an adequate basis or a reasonable explanation for deviating from the DOT. *Dukes v. Colvin*, No. 3:14-CV-173, 2015 WL 1442988, at *3 (N.D. Tex. Mar. 31, 2015) (citing *Carey*, 230 F.3d at 146-47). In *Carey*, the Fifth Circuit held:

> To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT . . ., we agree with the majority of the circuits that the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so . . .. Adopting a middle ground approach, in which neither the DOT nor the vocational expert testimony is per se controlling, permits a more straightforward approach to the pertinent issue, which is whether there is substantial evidence supporting the Commissioner's determination that this particular person can do this particular job or group of jobs.

*Carey*, 230 F.3d at 146-47; *see also Dukes*, 2015 WL 1442988, at *3; *Augustine v. Barnhart*, No. 1-00-CV-449, 2002 WL 31098512 at *9-10 (E.D. Tex. Aug. 27, 2002); *Hollan v. Apfel*, No. 3-00-CV-0002, 2001 WL 180151 at *6 (N.D. Tex. Feb. 20, 2001); *Mealing v. Astrue*, No. 6:08-

2478, 2009 WL 2144421, at *7 (D. S. C. July 14, 2009) (explaining that neither the DOT nor vocational expert testimony automatically trump when there is a conflict between the two, but the ALJ must resolve the conflict by "determining if the explanation given by the vocational expert is reasonable and provides a basis for relying on the testimony rather than on the DOT"). A "reasonable explanation" that provides a basis for relying on vocational expert evidence rather than on the DOT may be based on other reliable publications, information obtained directly from employers, or from the vocational expert's personal experience in job placement or career counseling. SSR 00–4p, 2000 WL 1898704, at *2.

### 1. *Conflicts Exist*

Here, the Parties seemingly agree that there is a direct conflict between Mr. Gartman's testimony and the DOT exertional level for a plumber supervisor [*see* Dkt. 19 at 8; Dkt. 20 at 3-4 ("the vocational expert testified that Plaintiff's work most closely corresponded with the occupation, plumber supervisor, which the DOT describes as requiring 'medium' exertion . . . [h]owever, the vocational expert further. . . (Tr.48)" opined that "[j]ust supervising and coordinating activities of other workers probably would just be [a] light and [a] not medium [exertional level]"). More specifically, Mr. Gartman's testimony that a plumber supervisor, who only supervises and coordinates, would only be a light exertional level is in direct conflict with the DOT listed exertional level of medium. Moreover, the ALJ ultimately found that Plaintiff has the residual functional capacity to perform jobs with a DOT exertional level of light, not medium. *Id*. at 18. As a result, both situations giving rise to a direct conflict exist here (*see supra* pg. 9): (1) Mr. Gartman's testimony that a plumber supervisor is a light exertional level is facially different than that listed in the DOT; and, (2) Mr. Gartman's testimony created a conflict

between the ALJ's residual functional capacity determination and the DOT description of the exertional level of a plumber supervisor.

### 2. *No Reasonable Explanation*

Accordingly, the Court turns to whether the ALJ proffered a reasonable explanation for deviating from the DOT classification of plumber supervisor, or if the record reflects an adequate basis for doing so. *See Carey*, 230 F.3d at 146. Again, in order to resolve a conflict in favor of the vocational expert the ALJ must articulate a "plausible reason" for accepting the conflicting testimony so that the hearing decision is susceptible to meaningful judicial review. *Dukes*, 2015 WL 1442988, at *4 (citing *Augustine*, 2002 WL 31098512, at *10). Plaintiff argues herein that the ALJ "took no action to obtain a reasonable explanation for the apparent conflict" between Mr. Gartman's testimony and the DOT classification of a plumber supervisor [Dkt. 19 at 8]; while Defendant asserts, to the contrary, that Mr. Gartman's record testimony [TR at 48] constitutes sufficient explanation [Dkt. 20 at 4]. Defendant also alleges that the ALJ reasonably interpreted Plaintiff's statement that he continued in the plumbing business but was not able to do any work as an affirmative "assertion that Plaintiff only supervised the employees that worked for him, and did not perform any actual plumbing duties during that period" [Dkt. 20 at 4].

The Court does not find a reasonable explanation in the record before it. As Defendant notes, the closest thing to a "reasonable explanation" for deviating from the DOT requirements is Mr. Gartman's testimony "that just supervising and coordinating the activities of other plumbers would require only light exertion" [Dkt. 20 at 4]. However, this testimony is expressly couched as an assumption or bare assertion and does not rise to the level of an articulate, reasonable explanation. *See e.g. Stark v. Commissioner*, No. 3:14-CV-150, 2015 WL 2251821, at *4 (N.D.

Miss. May 13, 2015); *Mealing*, 2009 WL 2144421, at *7; *Dunn*, 2013 WL 4756377, at *7. Indeed, Mr. Gartman provides nothing more than a bare assertion that a plumber supervisor "[j]ust doing the supervising and coordinating activities of others **probably** would just be light and not medium" [TR at 48] (emphasis added). Mr. Gartman did not explain, in any manner, how he came to this conclusion, nor did he proffer any reliable publications, information obtained directly from employers, or any personal experience and/or expertise that he was relying on in making this determination. *See Stark*, 2015 WL 2251821, at *4; *see also Mealing*, 2009 WL 2144421, at *7 (finding the reasonable explanation given by the vocational expert grounds for remand because it was "simply an affirmative answer to the ALJ's question as to whether the conflicting answer was based upon his personal experience.") This failure to include any explanation resolving the conflict violates SSR 00–4p and also the Fifth Circuit's holding in *Carey*.[7] *See Stark*, 2015 WL 2251821, at *4. In light of these errors, this Court has no way of determining whether substantial evidence supports the ALJ's finding at step four of the sequential evaluation process and remand is warranted.

## II.     HARMLESS ERROR

The Fifth Circuit has held that procedural perfection in administrative proceedings is not required and any variation amounts to harmless error that is not grounds for reversal, unless the substantial rights of a party have been affected. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *Audler*, 501 F.3d at 448. "[P]rocedural improprieties . . . will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of

---

[7] It is possible, as Defendant suggests, that the ALJ interpreted Plaintiff's testimony regarding his continued co-ownership of the plumbing business in 2005 as "an assertion that Plaintiff only supervised the employees that worked for him, and did not perform any actual plumbing duties during that period" [Dkt. 20 at 4]. However, this is pure conjecture, as the ALJ's decision does not provide the Court with any such explanation. Remand is required here because the ALJ failed to provide a reasonable explanation for deviating from the DOT classification of plumber supervisor, and the record does not reflects an adequate basis for doing so. *See Carey*, 230 F.3d at 146

substantial evidence to support the ALJ's decision." *Alexander v. Astrue*, 412 F. App'x 719, 722 (5th Cir. 2011) (quoting *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)). When the ALJ fails to discover and address conflicts between the testimony of a vocational expert and the DOT, the claimant is not entitled to relief unless he can show that he was prejudiced by the error. *Huey*, 2015 WL 5771818, at *9 (citing *DeLeon v. Barnhart*, 174 F. App'x 201, 203 (5th Cir. 2006)). "A claimant establishes the requisite prejudice by showing that, 'if the ALJ had fully developed the record,' additional evidence would have been produced that 'might have led to a different decision.'" *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000)).

Here, the ALJ's failure to adhere to SSR 00–4p prejudiced Plaintiff because the evidence that would have resulted from compliance with the ruling might have led the ALJ to determine that Plaintiff is not able to perform his past work as a plumber supervisor. *See Id.* ("Here, the ALJ's failure to adhere to SSR 00–4p prejudiced Plaintiff because the evidence that would have resulted from compliance with the ruling might have led to a different [disability] decision.") (citing *Jackson v. Astrue*, No. 4:11-CV-28, 2012 WL 4943547, at *12 (N.D. Tex. Aug. 23, 2011). Questions regarding the exertional level conflict could have clarified that Mr. Gartman's testimony was based on his experience with job placement in the plumbing industry or was based upon other reliable publications. Alternatively, questions regarding the exact duties Plaintiff had while co-owner of the plumbing business could have shed light on the exertional level required to perform his past relevant work. Thus, the ALJ failed to fully develop the record, the requirement for establishing prejudice has been satisfied, and remand is warranted. *Jackson*, 2012 WL 4943547, at *12 ("The ALJ failed to fully develop the record as required by SSR 00–4p . . . the ALJ's failure to abide by SSR 00–4p prejudiced [plaintiff], and remand is warranted.") (citing *Newton*, 209 F.3d at 458).

## CONCLUSION

The record does not provide an adequate basis for reliance on the vocational expert's testimony, and as a result, the hearing decision is not supported by substantial evidence. Accordingly, the Commissioner's decision should be reversed and the case remanded for further proceedings consistent with this opinion and applicable law, including at least: (1) clarification of the vocational expert testimony; and (2) resolution of the conflicts between such testimony and the job description listed in the DOT.

Pursuant to the foregoing, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this opinion.

**SIGNED this 4th day of November, 2015.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE